Ward *v.* The State.

(120)             WARD *v.* THE STATE.

1. It is the duty of the grand jury to inquire diligently into all offences against law committed in their several counties.

2. In the exercise of their duties, they may cause such persons to come before them to give evidence, as they believe most likely to have a knowledge of any violation of the law.

3. A witness summoned to appear before the grand jury and give evidence, and refusing to tell " what person or persons have so bet on Faro, other than himself, and not naming himself," is liable to imprisonment.

4. It is the province of the Court to judge, whether any *direct answer* to the question propounded will furnish evidence against the witness.

5. The witness is not bound to answer, when his answer *may di close a fact* which forms a necessary and essential link in the chain of testimony, sufficient to convict him of crime—and of this he is to judge.

ON APPLICATION for a *supersedeas*, on a writ of error from the Circuit Court of St. Louis county.

M'GIRK, C. J., delivered the opinion of the Court.

The case appears by the record to be, that at the late term of the Circuit Court for the county of St. Louis, the grand jury for said county caused a subpœna to be issued for said Ward, to appear before them and testify generally, without saying in what particular matter or cause he was to testify. Ward accordingly appeared, and was sworn to give evidence to the grand jury. He went before the grand jury to testify.

The first question asked by the foreman of the grand jury was this: " Do you know of any person or persons having bet at a faro table in this county, within the

Ward *v.* The State.

last twelve months? To which the witness answered, "I do." The foreman then desired the witness to tell what person or persons have so bet, other than himself, and not naming himself. The witness declined answering, saying that he could not answer without implicating himself. Ward was then directed by the Court to answer the requirement of the grand jury, but not to name himself as a better; which he refused, alledging that to answer thus would implicate himself. Whereupon the Court committed him to prison, till he should consent to give the evidence required, and till the further order of the Court.

A writ of error is sued out, a supersedeas asked for.

(121)  On this state of facts, several questions are made. The first in order is, that the grand jury have no right to interrogate a witness in this general way; but that an indictment should have been drawn up, charging some particular persons with crimes, and that the witness should then be required to give his testimony as to the matter of the indictment. Otherwise the grand jury may send for every person in the county, and inquire generally of each if he knows of any offences against law; and that this would be oppressive to witnesses, and dangerous to citizens.

The first answer to this is, that it is the duty of the grand jury to inquire diligently of all offences against law. Now if it should ever happen that a grand jury should determine to have summoned every person in the county, with a view to make the experiment, if perchance they might find out some offence, I have no doubt that it would be the duty of the Court to withhold its process and stop such a course. This would be an abuse of power.

The next answer to this is, that no such case appears by the record. I take this case to be an ordinary case, when perhaps the jury had probable cause to believe that some offences had been committed against law; and that so believing, they desired in discharge of their oaths, and of their duties to their country, to inquire; and how should they inquire? Not by going into the secret recesses of gamblers and gambling devices, to ask and seek information, but to send for persons who might, in their opinion, be most likely to possess evidence relating to these matters. It is a solemn and important duty that every citizen owes to his country, to give evidence in Courts of Justice against offenders against the peace and good order of the community. A grand jury should be considered trustworthy in this matter. They stand as a rampart between a malicious or incensed prosecution in case of life and death; no man can be brought to trial, on the lowest or the highest offences known to the law, unless the grand jury shall say so; yet they are not to be trusted with the power to send for witnesses, till some malignant prosecutor or some injured person shall cause an indictment to be sent up to them. This would strip them of their greatest utility, would convert them into a mere engine, to be acted upon by Circuit Attorneys or those who might choose to use them. This point is untenable.

The next objection is, that the act of the Legislature respecting witnesses, does not authorize the Court to imprison in this case; because it is conceived that the authority there given is only to be exercised when a witness refuses to give evidence (122) in some cause pending, and that here no cause could be said to be pending, as it does not appear that even an indictment was before the grand jury.

The language of the act of the General Assembly is, "that any person summoned as a witness in any cause depending in any Court of Record, or before Commissioners, Referees, or other persons appointed under the authority of the Court to take his deposition or testimony, and failing to attend, not having a reasonable excuse, may

be compelled by attachment to appear," &c., " and any person so summoned and attending, who shall refuse to give evidence, on oath or affirmation, shall be committed to prison by the Court or other person authorized to take his deposition or testimony, there to remain, &c., until he shall give such evidence." See *Rev. Code*, 796–7.

It is insisted by the counsel for Ward, that the true construction of this act is, that before a witness can come under its operation, the witness must be summoned before the Court or other person authorized to take testimony ; and also that there *must* be a cause depending before such Court or person.

This construction is not a correct one ; my reading of the act is, that if any person shall be summoned in any cause depending in any Court of Record ; here I drop the words " in any cause depending in any Court of Record," and read, that if any person shall be summoned as a witness before commissioners, referees, or other persons appointed under the authority of the Court, to take his deposition or testimony, and shall refuse to give evidence, such person shall be committed to prison till he shall give such testimony, &c. I understand that a grand jury is a body known to the law, and that they act under the authority of the Court, and have a right to take testimony. According to this view, there is no error on this point.

The next inquiry is, was the witness right in refusing to answer the question on the ground that the answer would implicate himself? The record shows that the game at faro is played with cards, by one person as banker against any number of persons, each person playing for himself, without any aid from the others, against the banker ; and that there is no common interest among those persons playing against the banker. Thus it appears that each player against the bank is separate and independent of all others. The inquiry made by the grand jury is, " tell who bet at the game of faro, not naming yourself." The answer of the witness is, (supposing him to be A.) that if I tell that B. C. and D. played, it will be either full or (123) partial evidence that I played. This is the whole argument of the case. An argument which I think is totally untenable in law and reason ; and I am very clear that the witness is bound to answer the question propounded by the grand jury. Suppose A. should swear that on the 10th March, in the market house, he saw B. play at faro. Then A. is indicted for playing at faro on the 10th March, at the market house, and on the trial the prosecution should give in evidence, that on the trial of B., A. had sworn that on that day, at that place, he saw B. play ; would any one pretend that the indictment is proved? The answer is obvious.

I understand the rule laid down by *Chief Justice Marshal*, in Burr's trial, 245, to be the true rule of law. It is this, that it is the province of the Court to judge whether any direct answer to the question that may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it, so as to furnish matter for that conviction. In such case the witness must himself judge what his answer will be, and if he say on his oath he cannot answer without accusing himself, he cannot be compelled to answer.

Both parties rely on this rule. Apply the rule to the case before the Court: The witness says he cannot answer without accusing himself of crime. The question is, who did you see betting at faro except yourself? It is believed that a direct answer in the negative to this would be, I saw no one bet at faro. This answer, I think, all will allow, does not accuse him ; but suppose his answer must be, that he saw B.

Ward *v.* The State.

bet at faro, can it not be true that though B. bet, yet he, the witness, did not? Does the mere fact that one man saw another commit crime, prove in law or reason that he who saw the crime committed was a participator? The only irresistible fact that is contained in it is, that he who saw the fact must have been in such position, with respect to the actors, that he could see or know the thing he swears to.

The rule then is, that the Court must judge whether a direct answer would furnish any matter for his conviction. If the witness answer that he saw no one bet, or that he saw B. and C. bet, he furnishes no matter that would be a necessary link in the chain of testimony, to convict him of betting at Faro.

(124) Suppose A. indicted for betting at Faro, what in law must be the evidence? The first link would be, that there was a Faro Bank, that there was a banker, and that A. and the banker did play at the game, and that A. and the banker did bet on the event of the game. These several links would form a chain of testimony sufficient to convict A. Now, though it be true, that without proof of the existence of the bank and the banker, no crime can be predicated thereon, yet it is equally true, that the facts that the bank and the banker both existed, forms no part of the offence of betting at Faro. The essential links are, that there was a betting on the game; these two must be coupled together, otherwise no offence can exist; and these two must be coupled with a third link, that is, that A. bet on the game. Then his offence is complete, entirely so, without naming who was the banker, or who else bet at the same time. Can it be pretended, that if it is said by A. that B. bet at the game, that on the trial of A. it must be proved that B. bet, before A. can be convicted?

I will answer that it cannot be so pretended. This I think most clearly shows, that there is nothing solid in the objection of the witness.

Let us put a case where a direct answer to a question would implicate a witness. Thus, did you set up and keep a Faro Table? Now, here the Court can clearly see, that if the answer be yes, the witness would subject himself to the penalty for setting up and keeping a Faro Table; and if the answer be no, he cannot so subject himself. But whether the answer be yes or no, is unknown to the Court; and in this case the witness must be the judge, whether his answer will be yes or no, and he may say he cannot answer this question without implicating himself. But in this case it is said, if the witness is bound to tell who bet at the game, without naming himself, then those persons who are named will be examined as to the fact, whether he bet; and if the witness is not compelled to name who did bet, then they will remain unknown to the grand jury, and cannot be examined whether the witness bet. I understand this doctrine to be grounded more on the fear of retaliation than on any sound principle of law. Will the law permit a man to keep offences and offenders a secret, lest the offenders should in their turn give evidence against him? I have looked into the cases cited at the bar, and I am unable to perceive any principle, in any of them, which ought to vary the foregoing opinion.

(125) The supersedeas is refused in this case; and also in the case, Kembly *v.* The State.