## Adams *against* Betz.

Watts,
1w 425
199  249

A record cannot be contradicted, and must be tried by itself when in existence: to refer to a jury to decide the fact when a judgment was entered is error.

ERROR to the common pleas of *Berks* county.

This was a controversy between two judgment creditors of *George Dessler*. The plaintiffs claimed under a judgment entered to January term 1816, and regularly revived by *scire facias* to January term 1821. *William* and *Samuel Moore* claimed under a judgment entered in their favour against the same defendants on the 27th of October 1814, on which a *scire facias* issued the 27th day of September 1819. The court charged the jury, that "if the judgment of *William* and *Samuel Moore* was entered of August term 1814, they have lost their lien. If it was entered of November term 1814, the *scire facias* issued in due time, it was revived and continued in full force, and the defendant acted correctly in paying the net proceeds to *Samuel Moore*. The *jury must decide the fact*, whether the judgment was entered of August term 1814, or of November term 1814, from the evidence. The judgments by warrant of attorney from the 7th day of September 1814 to the 27th day of October 1814 inclusive, were entered of November term 1814. This judgment of *William* and *Samuel Moore* against *George Dessler* was among them, and the last one so entered. It appears from the record that the pen is run through November and August written above it on five pages. The declaration is headed of August term 1814, and indorsed the 22d of August 1814. If the jury believe that the judgment was entered of August term 1814 the lien was lost, as the *scire facias* issued on the 27th day of Sep-

3 D

[Adams v. Betz.]

tember 1819 after the expiration of the five years from the first day of August term 1814."

This part of the charge embodies all the principal facts on which a decision of the question presented to this court depends. There was, however, an erasure or obliteration in the caption to the declaration of August term 1814, which appeared to have been done while the prothonotary was absent on military duty during the late war, and was supposed to be in the handwriting of the late Judge *Spayd*, who officiated in the office while the prothonotary was absent.

*Darling* and *Baird*, for plaintiff in error.

The opinion of the Court was delivered by

Ross, J.—Three errors have been assigned. They are all one and the same in substance, only varying in the manner of being presented to the court. The only question is, was the court bound to decide, whether *Moore's* judgment was of August or November term 1814, or had they a right to refer that question to the decision of a jury? The court expressly submitted the question as a matter of fact to the jury.

I think it will scarcely be denied, that by the acts of assembly and the adjudications of the courts, the rights of judgment creditors have been rendered very doubtful, if not insecure in this state. In the effort which has been made to exonerate lands from the liens of judgments after a lapse of five years, a train of decisions has been made, almost extinguishing every description of lien on a sale by the sheriff. No one can tell what lien could now be created on land, which would not be extinguished by such a sale, unless that of a mortgage under the act of 1830. Even this act has not yet received a settled construction. It is much to be regretted that it is so obscure, as to present difficulties in giving to it a construction which will accord with the intention of the legislature. Indeed it is almost impossible to discover from it what the intention of the legislature was as respects the various cases which come before the court. It seems to me, that it would be adding greatly to the uncertainty which now exists, to suffer a jury to decide whether a judgment was entered of one term or of another, or whether an interlineation on the face of the record was made at the time of the original entry or not. It would be unsafe to do so. It would render judgments, and titles to land derived under a judgment uncertain and insecure. If this power were exercised by a jury, it is impossible to foresee the uncertainty that would be created. The priority of a judgment or mortgage would frequently depend upon the mere whim and caprice of the jury, in cases where the question arose in consequence of some correction or interlineation made in the record, and appearing on the face of it. There would be no fixed and established rule; but in each case the question of priority would be decided according to the views of the particular jury who tried the case; and thus a judgment which

[Adams v. Betz.]

may have been actually younger in its date, might be declared older than a prior mortgage or judgment. Such uncertainty would indeed be productive of much mischief; but it is not the law, and I earnestly hope never will be the law, that a jury can decide whether a record be correct or not. Highly as I appreciate the integrity and capacity of a jury to determine matters of fact, in all cases within the legitimate sphere of the functions confided to them, I am nevertheless constrained to believe, that neither their habits nor their occupations fit them for deciding questions of law. One jury could not fix a standard of decisions by which another could be governed.

The general principles of the law, applicable to this point, are thus laid down. A record imports absolute verity, and cannot be contradicted by evidence, though by a witness of the best credit. 1 *Roll. Ab.* 757. And again, records import absolute verity, and must be tried by themselves, and admit of no averment to the contrary. *Co. Lit.* 117, *b.* 260, *a; 3 Bl. Com.* 24, 331.. If the question be as to the existence or contents of a record; the trial is by inspection of the record itself, if it be of the same court. 1 *Stark.* 150; *Burk's Executors* v. *Tregg*, 2 *Wash. Rep.* 250; 1 *Phil. Evid.* 238. The cases already quoted are sufficient to show, that where the record is in existence, it must be proved by itself, on inspection by the court, if a record of the same court; and cannot be contradicted. The case of *Dickson* v. *Fisher*, 1 *W. Black.* 664, is so applicable to the present case, that I will refer to it more particularly. It was an action for bribery at the election for members of parliament. The precept for the election had been directed to the mayor *and* commonalty, but the words "and commonalty" were struck through with a pen. The defendant offered, but was not permitted to give parol evidence to prove, that the words "and commonalty" were on the precept, and not obliterated, when the same was delivered to the mayor, and returned by him. The court decided, that parol evidence ought not to be admitted to vitiate the record, and to prove it to have been *wrong*; though it might have been admitted to prove it to be *right*. They also decided, that the precept, being found in the proper office with those words obliterated, shall be intended to have been always in that plight. This case then decides, that a record, found in the proper office, shall be intended to have been always in the same state in which it is found; and that parol evidence cannot be received to prove it is *wrong*, though it might be admitted to show it is *right*. The charge of the court is in direct contradiction to the principle laid down in this case; which is conclusive against the right of the jury to decide the question submitted to them by the court below.

In England, the minutes from which a record is afterwards made up, do not themselves constitute a record. There the record is never considered such until enrolled. It will appear by note *b* to page 238 of *Phillips's Evid.* (*Ed.* of 1820), that it has been decided, that the indorsement of the clerk of enrolments of the day of enrolments, by way of date, is part of the record, and cannot be averred against;

[Adams v. Betz.]

nor is evidence admissible to show, that *in fact* it was *enrolled* on some other day ; and this, although the date be written on an *erasure*. I am aware of the *dicta* of Chief Justice *M'Kean* in 1 *Dall.* 65, on the authority of *Alleyn* 18 ; also of the case in 1 *Salk.* 285 ; 1 *Ventr.* 259, 7 ; 12 *Vin.* 124, 248 ; 2 *Roll. Ab.* 575, *pl.* 20 ; *Sty.* 22, 34 ; and *Hardr.* 120. But upon an examination of these cases, I apprehend it will be found, that the parol proof was only admitted where the record was lost, or so obliterated as not to be legible ; and that any opinion which is given in these cases, as to the admission of parol evidence, can only be considered as the *dictum* of the judges, because it was not the point presented for decision. They will not be found to militate against the cases which support the doctrine, that a record cannot be contradicted, and must be tried by itself, when in existence. I am therefore of opinion, that the court erred in referring it to the jury as a fact which they must decide ; and consequently the judgment must be reversed, and a *venire facias de novo* awarded.

Judgment reversed, and *venire de novo* awarded.