## J. H. BOWMAN et al. *v.* M. McLAUGHLIN.

1. CIRCUIT COURT—LOST PLEADINGS—POWER TO RESTORE OR SUBSTITUTE THEM—PROCEEDINGS IN SUCH CASE.—The circuit courts possess the power to restore or substitute lost pleadings in cases pending and undetermined, and to proceed to trial upon the pleadings thus restored, and if a defendant, who is furnished with the opportunity to supply his own pleadings, fails or refuses to do so, the court may permit the plaintiff to do it, and proceed to trial, and the defendant in such case shall not be heard to complain.

2. SAME—SAME—TRIAL BY JURY WITHOUT DISPOSING OF DEMURRER TO PLEAS IN ABATEMENT—CASE IN HAND.—Where the petitioner to enforce a mechanic's lien, by leave of the court amended his petition, by dismissing it as to certain defendants and erasing their names from the petition, and thereupon defendant obtained permission of the court to withdraw the plea before pleaded and file "further pleas in this behalf," and under this leave pleaded in abatement, because of the dismissal of the suit as to certain of the defendants. To which pleas in abatement petitioner demurred, and the record showed no disposition of the demurrer, but a trial was had, resulting in a verdict for petitioner, which on motion was set aside, and afterward the pleadings being lost, they were restored by petitioner by order of the court, which gave defendants leave to restore their own pleadings, or to plead to the petition as restored, any defense they chose, and the demurrer of petitioner to the pleas in abatement was sustained and further proceeding had, resulting in a second verdict for the petitioner on the merits: *Held,* 1st. That the pleas in abatement were unauthorized by the order to file "further pleas in this behalf," under which only pleas to the merits could be pleaded; 2d. The question involved in the plea is presumed to have been disposed of on the application to amend the petition; 3d. The pleas were demurrable; 4th. If there was any error in reference to these pleas before the first trial, the granting of a new trial cured it.

3. SAME—SAME—PRESUMPTION IN FAVOR OF ACTION OF CIRCUIT COURT IN GRANTING LEAVE TO AMEND IN THE ABSENCE OF THE FACTS.—The action of the circuit court in permitting an amendment in the pleadings will be presumed to be correct when the record does not show the facts on which the court acted.

4. MECHANIC'S LIEN—SUIT TO ENFORCE IS IN THE ,NATURE OF A SUIT IN EQUITY, AND DISTINCT JUDGMENTS MAY BE GIVEN.—The proceeding to enforce a mechanic's lien is in the nature of a suit in equity, designed to give effect in one suit to the liens of mechanics and material men, who have contributed to

the erections and improvements on the premises, and also to conclude the interests of all persons at whose instance and for whose benefit the work is done and materials supplied. Therefore there may be several distinct judgments.

5. CASE AT BAR IS PECULIAR AND COURT DISPOSED TO BE NICELY CRITICAL. — In view of the peculiar circumstances of this case (the loss of papers by the casualties of war, and the great difficulty in substituting them) the court was not disposed to apply to it a nice criticism, but rather to reach approximate justice, so far as this could be done in accordance with the principles of law.

6. SAME — EFFECT OF JUDGMENT AS TO PARTIES — CONCLUDES ONLY THOSE WHO ARE PARTIES TO IT. — The judgment rendered on a petition to enforce a mechanic's lien concludes only the interest of the parties to it. Those not parties to the proceeding are not in any manner affected by the judgment.

ERROR to the circuit court of Hinds county. WATTS, J.

*D. Shelton*, for plaintiffs in error.

The court erred in disregarding Bowman's and H. Hilzheim's two pleas and plaintiff's demurrer thereto, all filed after erasure of the names of some of defendants from the petition, and forcing a trial without disposing of those pleas on the demurrer, or requiring defendants to refile their original answers, withdrawn by leave of the court.

True, those pleas are not in the record, and we only know their contents by defendants' answer to the petition to supply papers, and from an affidavit of Bowman, made when the pleas were filed. From these we have the substantial basis of those pleas, to wit, that Philip Hilzheim owned one-fourth interest in the property, was joint contractor for the plastering, and was dead since the suit brought against him, that they stated the names of his children and widow, and that no administration had then been taken on his estate, and that plaintiff, after Philip Hilzheim's death had been entered of record, dismissed as to him and erased his name from his petition, by leave of the court, and that it concluded with a verification, and that the same be abated. The foregoing facts are the substantial basis for a plea against the former prosecution of the suit in its then form ; why the suit should be abated, unless plaintiff should restore his original declaration, and by *scire facias* make P. Hilzheim's administrators and heirs parties. It was no plea in bar but in abatement for a

want of proper parties produced by plaintiff's own action. Now the court had given Bowman and H. Hilzheim leave to withdraw their former answer to the merits and to file these pleas ; the plaintiff had demurred to them, and that demurrer was pending when a trial was forced on Bowman and H. Hilzheim, and other steps were taken by plaintiff, without disposing of their pleas or having the answer withdrawn refiled, without any issue of fact made in the proceedings.   True, the court afterward set that verdict aside, and thus the case stood until the papers were lost.

Now, the further prosecution of the suit, without disposing of defendant's pleas, was equivalent to treating them as nullities and frivolous ; the error was in permitting plaintiff to take any steps upon the merits of his case without first disposing of the pleas, and, if necessary, having the proper defendants brought into the suit.   The court should have decided the demurrer and not ignored the pleas.   It is true that this verdict was afterward set aside for some cause, but the error consisted in the court's action regarding the pleas, and proceeding with the cause on its merits before the pleas were disposed of, and the proper parties made defendants.

The substitute for the original answer should not have been filed as part of the record.

That answer had, by leave of the court, been withdrawn in 1860, and pleas in abatement filed before the papers were lost.   Those pleas were pending on demurrer when the papers were lost, and the original answer never having been restored, was no part of the record.   The demurrer to the pleas had to be disposed of before an answer to the merits could be demanded by plaintiff; but the court sustained the demurrer to pleas lost, and gave leave to file the pretended substitute for an answer withdrawn at the same moment and in the same order.   Thus plaintiff was allowed to file a substitute for an answer to the merits which had been no part of the cause, since it was with the court's leave withdrawn for the purpose of filing the pleas in abatement.

It may be said that defendants had been offered the opportunity to answer on the merits. If that were true it might be a reason for judgment by default for want of an answer, but no reason for plaintiff's forcing on defendants a substitute for a pretended plea, long before withdrawn by the leave of the court. But, it is not true, except that the court had previously, on plaintiff's motion, required defendants to file a substitute, or answer plaintiff's substituted complaint whenever it should be filed. But the substitute for the complaint, and the substitute for our withdrawn answer were presented by plaintiff and allowed to be filed by him at the same moment, and while our pleas in abatement were still pending on demurrer, they were ordered to be filed, and the demurrer to our pleas sustained at the same moment.

Defendants never had an opportunity to answer to the merits. There was no lost answer to be substituted by us, the court or the plaintiff. It was almost absurd to allow plaintiff to file a substitute for defendants' answer, withdrawn by them, with leave of the court, five years before. On sustaining plaintiff's demurrer to his substitute to our pleas in abatement, the court should have awarded *respondeat ouster*.

There was no answer to the merits lost, it had been withdrawn, and, therefore, there could be no substitute filed.

4. The court erred in trying the cause on the conditions of the pleadings, even after the substitutes were filed in lieu of the originals, because there was, in fact, no issues to be tried.

After sustaining the demurrer to the plea in abatement, there was, in fact, no plea or answer in the case, and no issue. The original answer in bar had, by leave of the court, been withdrawn by defendants when the plea in abatement was filed in 1859, and that original answer was never refiled, and no opportunity was ever given to refile it. If it had been in existence, it would have been no part of

the pleadings in the cause until refiled by defendants at their own option. The court could not have compelled defendants to refile it; it could only have given judgment by default for want of an answer. When, therefore, the substitute was filed, it was no part of the pleadings, but a substitute for a paper that had been withdrawn by leave of the court. It took only the position that the original would have done if it had been among the papers, once filed, but now withdrawn. The plaintiff could not restore it as a plea, nor could the court. Clearly, then, there was neither plea nor answer in the case at the time of its trial.

The correct order, on sustaining the demurrer to the plea in abatement, would have been *respondeat ouster*, according to Code, 495, art. 110. The court erroneously treated the answer, withdrawn in 1859, as an existing answer of record, and forced a trial on a substitute for it.

But if we were to regard the substitute as an existing answer of record, it would not better plaintiff's condition. It did not bring the pleadings to issue. It states several affirmative matters in avoidance of the liability alleged by plaintiff: that it was a part of the contract that the work was to be done with good materials, in a workmanlike manner, and completed in a specified time; that plaintiff employed bad materials, and did the work unskillfully, by reason whereof the plastering fell off, was dangerous to guests, and did great damage; that plaintiff did not complete it in the time specified; that defendants had paid plaintiff $3,000, which was more than the plastering was worth as done; that the contract was not in writing, and plaintiff did not sue in six months after the debt was, by contract, to be paid. Now, the foregoing are affirmative allegations in avoidance, and yet plaintiff neither admitted, denied or traversed them, but forced trial without replication to them; that is, plaintiff tried the case before a jury sworn to try issue joined, when many of the material questions of fact were not brought to issue, even by his own pretended answer, made and filed by him in our name. When plain-

tiff was making and filing all the pleadings on both sides, he should have filed his own replications to the affirmative matters contained in the answer filed in our name by him.

I have made the foregoing points on the details of the proceedings, on the petition to substitute, for the purpose of showing in advance of the position I now assume, the insuperable obstacles to that remedy in this case, and now I contend that, under the facts developed by the petition, answers, and the remaining original papers, there was no proper remedy on the petition to substitute; but the petition should have been dismissed on defendant's motion, filed and heard at the same time plaintiff's motion to file the substitutes was heard, to wit, on the 23d of November, 1867.

The act which gives this remedy by substitution only makes it concurrent with the jurisdiction of a chancery court. 1864, p. 50, § 17. It was never intended to be made the instrument of wrong, and should, therefore, never apply where the full benefit of all former proceedings could not be given to both parties. When this could not be effected, the remedy was plainly in chancery by original bill, to which no intervening limitation could run, because of the loss of papers and the impracticability of resuscitating the "lost cause." That court could have done full justice; the remedy by substitutes could not, because it was plainly impracticable to file substitutes that were certainly correct. At the time of the trial of that motion it had already been shown that plaintiff and defendant disagreed materially as to the contents of the lost documents; and neither party undertakes to state the contents in more than general terms, not in detail. Not one particle of proof had been taken to show which was right, where they differed as to the general purport of the lost documents.

Now, there was not one of those documents in which the details were not necessary, in order to make a fair substitution, and yet, wherever they differ, it is on some material matter of the lost documents. To show the truth of this, I

refer to the foregoing part of this argument.  But more than this ; take the plea in abatement and the bill of exceptions. Upon the petition, answers and proofs in this cause, it is now impossible to say whether the plea in abatement, as originally filed, was, or was not, a good plea.  It is impossible to say whether the exceptions were, or were not, well taken, as shown by the bill.   For the circuit court to undertake to decide the first of these questions was a mere stagger in the dark ; for this court to undertake to decide the latter would be an equal blunder.   Similar illustrations might be made of the other documents.   This case was in a predicament in which nothing less than copies of the originals could give the defendant the full benefit of any of the lost papers, or, if not copies, proof of every material statement, allegation and averment contained in the originals. Without these the demurrer to their plea was sustained, when, for all that court knew, or this court knows, the plea, as filed by defendants, was perfectly good.   Without these this court would refuse to reverse on the matters excepted to in 1859, when, if the original showing all the evidence were here, it would be reversed.   Who can say that the demurrer, filed in this case in 1859, was in 1868 sustained to the plea filed in 1859, or to the equivalent thereof ?   Certainly it was not, if the answer is to be believed, and that is all we know about it.   Who can say that, in this case, this court will, on the substituted bill of exceptions, decide the questions raised by the real bill of exceptions taken in 1859 ? Certainly it will not, if the answer and Bowman's cotemporaneous affidavit is to be believed, and these contain all we know about it.

How, I ask, is it possible that defendants could avoid suffering injury by the filing of these pretended substitutes by plaintiff ?   Look at every one of them, the complaint, the accompanying account, the answer of Bowman & Hilzheim, the bill of exceptions and the plea, and inquire on the petition, answers and evidence what assurance that these are equivalents of the lost originals, and no man can say that he

knows them to be equivalents ; no man can say that on the substitutes defendants have the full benefit of the originals. So far, therefore, as the court has acted or shall act on these substitutes, every thing is uncertain, and the case under these proceedings becomes a mere legal scramble without order, certainty or truth.    The legislature never intended such results ; such cases were intended to be left to the chancery jurisdiction in which full justice could be done both parties, without prejudice to either by the loss of the papers in the suit at law, and I, therefore, conclude, that at the time the said cross motions were decided it was manifest that in this case the remedy by petition for substitution did not exist ; that the circuit court should have dismissed the case and turned plaintiff over to his remedy in chancery by original bill.

I shall notice one other reason why, on defendant's motion, the petition should have been dismissed instead of plaintiff's substitutes filed.   The act which gave the remedy by petition at law had been repealed after the petition and answers were filed, but before the substitutes were presented in 1868, and that was one of the grounds of defendant's motion to dismiss the petition.

The act giving the remedy by petition only created a new remedy, it created no new right.    The fact that plaintiff had filed his petition under the act did not give to plaintiff any vested right to that particular remedy, he only had the right to avail himself of the remedy so long as the legislature continued the remedy in existence ; when the remedy was repealed it ended while all the right remained.    True, the legislature could have continued the remedy as to all petitions previously filed, if they had desired to do so, but they did not, and it ceased from the moment the remedy was repealed.  By what authority, I ask, did the circuit court order the substitutes to be filed ? That was its first remedial act under the statute of 1864, and before it did that the power to grant the remedy had been taken from it, and it acted without authority.   From the time the enabling act

was repealed the remedy was as dead as if it had never existed.

*W. P. Harris*, for defendant in error.

The result attained in this case is just. The trial was fair, as we must presume, since no exception was taken. The issues tried were such as admitted of all the defenses which the defendants professed to have. There is not a pretense that the defendants were prejudiced by the action of the court. The substituted pleadings were proved by the light of their sworn admissions, and the records applied according to their own suggestions of its contents, and the orders and papers still extant. On examination the court will find that every exception taken and every defense made prior to the loss of the files, is fully preserved to the defendants in the substituted papers, according to their own statements of the nature and scope of the defense or exception. The court will moreover perceive that the court below offered them the alternative of accepting the substitutes offered, or of framing new pleas or defenses without limit or restriction as to matter or numbers. The absence of certain depositions was, at their own instance, supplied by taking their own statement as to what the witnesses proved. To have dismissed the cause because of the absence of certain parts of the files would have been equivalent to a denial of remedy to the plaintiff, because his lien would have been lost, and the suggestion that a court of chancery could administer relief is simply absurd.

The question arises, had the court the power to supply, for the purpose of a trial, the lost papers, taking into view the statute of amendments and the control of the court over the issue in the case. We think such power resides in the courts of law, and that the sole question in such cases is the evidence of the non-existence and contents of the lost papers, such as to enable the court to pronounce, with rea-sonable certainty, what the contents were, so that in the case of pleadings, for example, the substantial issues as they

existed may be preserved substantially, or the court enabled to form an issue on the merits. Lost records may be supplied by satisfactory evidence of their former existence and contents by parol. Eakin v. Vance, 10 Smedes & Marsh.; Scott v. Loomis, 13 ib. 635, and authorities cited. In any case, therefore, where it is material to the assertion of any right, to prove the contents of a writ, declaration or other matter of record, it may be proved by parol or other evidence of a secondary character, if the document be lost or destroyed, without the fault of the party seeking to establish it. This well-established rule of law and practice necessarily involves, in·the case of pleadings, the right to substitute pleadings in lieu of those lost or destroyed, because such substitution is nothing more than reducing to writing, for greater certainty and convenience, the evidence of the contents of the lost plea or declaration as shown to the court.

In the case in hand the record showed that there had been an issue joined, a jury trial of the issue, and a judgment and a new trial granted. The case stood for trial, but the papers constituting the issue had been accidentally destroyed. The only obstacle in the way of a trial was the absence of the paper showing what the issue was. There was before the court evidence that there was an issue, and what that issue was in substance and legal effect ; so clear was this evidence, that from it, for the information of the jury, the issue could be framed in writing to preserve uniformity and certainty, and this was done and it is called substitution. Why this cannot be done we are at a loss to perceive. It is admitted that in the action of ejectment title may be made out by parol evidence of a citation or process issued, served, and returned where the paper is lost from the files. Nay, the rule admits of the proof, the judgment or decree of sale, where the records have been accidentally lost, and a recovery of land on such proof, the title depending absolutely on the existence of a decree on due service of process and a sale. There appears to be energy enough and

authority enough in the courts of law, under the common law, to supply every part of the record evidence in such a case. Can any rational mind, or any mind capable of apprehending the essential principles of law and evidence, draw any solid distinction between such a proceeding, and that in which the court admits evidence of lost pleadings? The only difference appears to be in the matter of reducing the evidence to writing. A difference not of a character to vary the rule.

We have looked in vain for the doctrine, in text-writers and decisions, that the loss or destruction of a declaration or plea puts the plaintiff to a new action; that accident shall inflict on the plaintiff a penalty so exorbitant. The position of the opposing counsel is, that the declaration and pleas, which are scribbled off with such facility by the pleader, are of a character so sacred and transcendent that the loss of either is fatal, although their existence and precise character can be established by irrefragable evidence. Let us see to what absurd results this position leads. Take the case of an action of *assumpsit* on a promissory note to which there was a plea of *non assumpsit*. The case being called for trial, it is ascertained that the plea has been lost from the files, and cannot be found. The plaintiff asks for a judgment *nil dicet*. The defendant thereupon makes oath, supported by the testimony of his counsel, that, at the return term, he filed the plea of *non assumpsit*, which has been lost or destroyed. The court refuses to enter judgment by default, and grants leave to file another plea or to substitute a plea. The plaintiff makes no objection, but the defendant declines, and moves the court to dismiss the cause because there is no issue to try and none can be made. Just imagine a condition of judicial decrepitude in which such a motion is allowed to prevail. Suppose, on the other hand, that the plea of *non assumpsit* is on file, but the declaration is lost. The defendant moves the court to dismiss the suit for want of a declaration. The plaintiff makes affidavit, supported by the testimony of his counsel,

that he did file a declaration on a note, of which he has a true copy. He produces the writ of summons. He proves that the declaration was in the form ordinarily in use. There being no demurrer to it, the presumption is, that it was correct in form and substance. Now, is it conceivable that, at this day, this condition of the cause demands its dismissal?

We have seen that every part of a record which is the foundation of a judicial sale, from the original writ down to the execution, may be supplied by parol evidence in a court of law to establish title under the sale. Shall we swallow a camel and strain at a gnat?

Under the common-law power of the court, and under the established rules of evidence, without the aid of any statute, it was competent to establish, by secondary evidence, what was the issue when the papers in which it was set forth have been lost. Examination and rational reflection will show that the principal, which admits secondary evidence to prove lost records, carries with it the power to put that evidence in a shape which legal certainty and convenience require.

The plaintiff below commenced to re-instate the case under the act of 1864 but, after the case had progressed to the point of the answer to the petition, the legislature repealed this statute without making any provision for pending suits. It was so much doubted that the proceeding under the statute could thereafter be prosecuted, that the plaintiff's counsel determined to rely upon the common-law power of the court, and the rules of evidence, and the special power in granting amendments, and in this particular action, to make up an issue, and therefore moved the court to substitute the pleadings, and offered proof to show what they were. The statute did not contemplate a substitution of papers. That power existed in the court before. It had been the practice of the courts of this state, time out of mind, to supply lost papers by secondary evidence. The principle which admits secondary evidence in cases of lost writings, pub-

lic and private, is of universal application. It matters not what effect was given to the repealing act of 1867. The right of the plaintiff and the power of the court and the rules of evidence remained as aforetime. The statute was deemed necessary to meet a class of cases in which the requisite proof, the record, was not attainable, and provided for putting the defendant on his oath. Clearly no view which the legislature might be supposed to have had as to this state of the law, at the passage of these acts, can influence the decision as to what the law was. Our position is, that, independent of any statute, the court had the power to do what it did do. The plaintiff availed himself of the sworn answer of the defendants in connection with the papers remaining as evidence of what was the state of the pleadings, and the contents of the lost papers. That answer, together with the affidavits made in the progress of the suits, the judgment at Raymond, the demurrer, the entries, and the deposition of Willis, with the exhibit, make the case so clear that no doubt could arise. The answer states the very character of the defenses which it alleges are stated "in substance," though not in the precise form and language. It is the substance alone that courts look at. We invite the court's attention to this answer. The pleadings or issues are made up from its explicit statements. The bill of exceptions was filed as the record shows. The answer states what it contained, and the substituted bill conforms to the answer.

The court will bear in mind, that, as to pleadings, the designation of the declaration as one in *assumpsit*, debt, or a petition to enforce a mechanic's lien, when the fact that no demurrer was filed to it, appears to convey to the mind of the court a distinct and perfect idea of what the substance of that declaration or petition was, and if the amount and date of the demand are given, and the time of maturity, the character of the declaration for all purposes is completely established, and so of the various pleas. If it be shown that a plea in abatement was filed for want of proper parties, and

the name of the omitted party is given, or if it be admitted that it was *nil debet, non assumpsit, payment,* etc., we know certainly and definitely what the plea was and can frame it with accuracy.

The petition sets forth the contract. The answer says it varies from the actual contract, as to the time in which the work was to be done  This admits that in all other respects the contract was correctly set forth.  The variance as to time could not affect the defendant injuriously, because the plaintiff was compelled to prove the contract as set forth in the substituted declaration, or to amend on the trial. The defendants do not assert that the contract, as set forth in the lost petition, differed from that set up in the one substituted, but say if it was the same, then it is incorrect, and assert what the contract was. This makes it manifest that the defendants were in a situation, under the new pleadings, to take advantage of the misdescription.

The defendants do not assert that the original petition admitted payments, but insist that either in that or the pleas, payment to the amount of $3,000 was in some way presented. The new petition admits the payment of $3,000. In respect to this matter, of course the defendants had the opportunity to allege and prove the payment, and they do not say that their ability to prove the payment was in any way affected. They admit the sum charged for the plastering. Taking the judgment at Raymond and its recital, and the defendants' admissions, the complaint filed under the order of the court in November, 1867, conformed in every material matter, to proof so exact, as to leave no doubt on any matter material as to the defendants' rights on the trial.

As to the pleadings the court will bear in mind that the court below gave them leave to file just such defenses as they might choose, as though they had not plead before, or to frame their substituted pleas according to the evidence of their character, under the 10th art., Code, p. 329. The court had this power. The defendants declined to do either. They determined to rely on the accident as their

defense, and simply opposed the *vis inertia* to the proceeding.   They made a multitude of objections, but it will be noted that they offered no proof to sustain them.   They professed to know what their defenses were and yet declined to renew them, or frame them in accordance with their own descriptions.   Under these circumstances, can they be heard to say that the plea, as to the want of proper parties, is not like the one they filed, when they refuse to file a new plea or to frame one on the evidence?   They relied on the want of power in the court on the evidence to cause an issue or issues to be framed, and must abide the consequences of their decision and accept the substitute, as constituting the issues of law and fact.   There is one sufficient answer to all their captious and querulous objections and complaints. They have not been able to point out in what particular their rights in the cause have been interfered with or prejudiced.   They, from policy, declined to present, in a bill of exceptions, the history of the trial, so that the court might see whether the merits of the case were fairly tried, and what was the real contract, with whom made, etc.   They had the full benefit of Willis' deposition and of all other depositions, for they do not complain that Willis' deposition was excluded, in their motion for a new trial.

If we have reached the conclusion that it was proper for the court to frame the issues, from the evidence before it, and of this there can be no doubt, and that those issues gave the defendant the advantage of all the defenses they professed to have, the verdict and judgment being correct because nothing is alleged against them, they will be sustained unless there is error in the matter of the bill of exceptions in the amendment striking out the name of Philip Hilzheim, and the judgment of the court on the demurrer to the pleas, setting up the want of necessary parties.

The loss of the bill of exceptions must be considered as an independent matter by itself, and we scarcely deem it necessary to urge that the plaintiff could not be subjected to

a dismissal of his suit or debarred from a trial of his case, because of the loss of a bill of exceptions. The court might have refused to substitute a bill of exceptions and still the plaintiff could not be affected by it. It was a loss which fell on the defendants and they could not shift it to the shoulders of the plaintiff. The allowance of the substitute was for their benefit, and they have availed themselves of it here by relying on it as showing error. If error, it was not error to their prejudice.

The question on this branch of the case is, did the court err in allowing the amendment by striking from the petition the name of Philip Hilzheim? The bill of exceptions does not show what proof was offered by the plaintiff, and it is manifest that the defendant offered no proof that Hilzheim had an interest in the "controversy."

The action of the court on the motion to amend was conclusive on the point of the introduction of Hilzheim as a party, or his representatives, and it could not properly be drawn into contest again in the suit by a plea in abatement. It is clear that the statute did not contemplate an abatement of the suit on plea.

The two pleas, therefore, should have been stricken out, and probably were, or the demurrer sustained as to them, but an omission to enter the order of the court. It is clear that there was a trial on the answer to the merits at Raymond, which involves the idea that these pleas were waived or overruled. 'But take them as substituted and standing on demurrer. The demurrer should have been sustained on two very intelligible grounds: 1st. The plea or pleas in abatement, or as defenses to defeat the suit, were inadmissible; for the omission to make a necessary party is not ground for defeating the suit or abating it; 2d. The pleas do not show an interest in the controversy nor that the omitted party had acquired a lien under the statute.

Where the court, therefore, allowed the plaintiff to place on the files the written evidence of the contents of his lost petition, and ordered that the defendants plead, or substi-

tute their pleadings, and that the case proceed to a trial, the defendants should either have plead or submitted to a judgment *nil dicet.* The court allowed an issue to be made up because the defendants would not plead, and it would be a monstrous perversion of right and principle to allow them to complain that the issues were made or that they were incorrectly made. There was no injury sustained that the defendants did not voluntarily incur. The framing of issues by the court and the jury trial were beneficial to the defendants; for, under the issues, they could have availed themselves of the misdescription of the contract, both as to the stipulation and the parties to it. Instead of taking the plain and simple course of presenting their defense, they chose to ask the court to inflict upon the plaintiff the dismissal of his cause and the loss of his lien, and they must take the consequences of their own obstinacy or stiff-necked refusals.

The act referred to was passed in aid of the original common-law powers of the courts, because the destruction of original papers and records was in many cases so complete, leaving no vestige of the files and proceedings, that the courts could not supply the loss. There were in many cases no living person to testify and no documents. The act therefore established a method by which the plaintiff might call out the sworn admissions of a defendant, but this act did not touch the general power of the court in cases where the exact character of the lost files could be clearly shown. The act did not therefore obviate the power to substitute pleadings, but it will be seen that it contemplated action on the petition and answer. In this case, after the repeal of the statute, the plaintiff by motion asked to substitute the papers, and resorted to evidence, most of which was in an authentic form, to show what the cause of action was, and availed himself of the written admissions of the defendants in aid of the fragments of the original files left.

To reverse this cause and turn the plaintiff out of court would, it seems to us, invest judicial proceedings with an infirmity calculated to subject them to ridicule and contempt. The same counsel who commenced this suit and defended it were still in the cause, and the same judge was presiding, and this circumstance, if it was necessary, tends to relieve our minds of any apprehensions that a fictitious case, or one varying in any essential particular from the case as it originally stood, was made and tried.

*T. J. & F. A. R. Wharton*, on the same side.

From the summary we have given for the record on all these points, we challenge the ingenuity of counsel for plaintiffs in error to show wherein his clients are prejudiced by the action of the court below. He was defeated in his Fabian policy of "masterly inactivity," it is true. In the elaborate written, as well as in his oral, argument, he has not attempted to deny that the issues upon which the case was tried in the court below were broad enough to cover any and every defense, which he pretends his clients had, or could have against the demand of the defendant in error. These issues were made up, chiefly, from statements taken from the affidavits of his clients, and the recitals in the orders of the court. When he objected that he could not recollect the matters of defense set up in the pleas originally filed by him, he was told by the court, "You have leave to file any other, and as many others, as you choose ; you know the character of the claim or demand set up in the petition of the defendant in error ; you can file pleas to cover every possible defense." These most reasonable and just terms he declined, preferring to have the court and the counsel for the defendant in error to pursue their own course, that he might reserve, excepting to every thing done, and trust to the chapter of accidents that some case might thus creep into the record, for which a reversal could be obtained.

The parts of the record not lost or destroyed are of a

character to preclude the possibility of doubt, that the case was submitted to the jury on the second trial on all the material points of pleading and evidence, and that substantial justice was done. It was only when the counsel for the plaintiff in error obstinately refused, either to supply the substance of his lost pleas or file new ones, setting up any and all matters of defense he might think proper, that the court determined not to be trifled with in this manner, or permit the ends of justice to be defeated, and, therefore, allowed counsel for defendants in error to propose and substitute pleas for him, under the direction of the court. The alternative was presented to the court of pursuing this, course, or denying justice altogether to the defendant in error, by visiting the misfortune of the plaintiffs in error, in the loss of his pleas, on the defendant in error. The latter was more fortunate in recollecting the substance of his part of the papers which were lost, or was more candid in admitting and supplying them.

Greenleaf says, "after proof of the loss of a record, its contents may be proved, like any other document, by any secondary evidence" when the case does not, from its nature, disclose the existence of other and better evidence. 1 Greenl. Ev. 683, § 509, and the numerous authorities cited in note 2; to the same effect the doctrine is laid down in Phil. on Ev.

Chief Justice Sharkey, after referring approvingly to the rule as laid down by the text-writers, says: "Following then, the rule thus established, we are inclined to hold that parol proof of the issuance and due service of citation was admitted, in connection with this proof of loss, under circumstances not implicating the party claiming the benefit of such testimony, in being instrumental in the loss." Eakin v. Vance, 10 Smedes & Marsh. 551. There is no pretense or suspicion that defendant in error was instrumental in the loss of the papers which were substituted. It was a loss resulting from the casualties of war. There is nothing to

distinguish this case in principle and in analogy, from the case above cited.

It would be monstrous to visit upon the defendant in error the loss of a just claim on which suit was pending, because of the loss of the pleas filed by the plaintiffs in error. This would be to shift the burden of a loss arising from no fault of defendant in error, but from the misfortune of the plaintiffs in error, from the shoulders of the latter, where it properly belongs, to those of the former. It is just as absurd to say that, in such case, the defendant in error can no further prosecute his action at law, but must go into a court of chancery, if his claim be not barred by the statute of limitations. The counsel for the plaintiffs in error invites us to seek redress in the latter forum, for, acting upon the wisdom of the maxim so aptly quoted by Judge Harris, in his oral argument, *"timeo Danaos, et dono ferentes."* We have learned from our experience in this case to "keek through" our adversary "with sharpened, sly inspection," and treat his invitations as those of the spider to the fly. The position of the plaintiffs in error is about this: the case is reached on the call of the docket; the party bringing the suit suggests the loss of part of the papers, and his readiness to supply a substitute, his declaration and account sued on, which are all of his part of the missing pleadings; the defendant admits that they correctly state the substance of those lost; he is then required to substitute such of his part of the pleadings as are lost; he refuses to do so upon the pretense that he cannot recollect them; the court refers him to other papers on file, conclusively showing the character of those lost; he still refuses, and the court, seeing that his refusal proceeds from an unwillingness to let the case come to trial on its merits, orders the substitute to be made, and the case proceed to trial, and thus may "have it hung on his own gallows." And, "*hinc illæ lachrymæ,*" with my astute friend, Mr. Shelton.

If there had been nothing else preserved of the record prior to the first trial, the judgment, which is extant, would

sufficiently show the character of the claim, and that there was a lien under the act in favor of mechanics, and the par- . ticular property subject to the lien. That there was an issue, and what was the character or legal effect of that issue, is just as clearly shown by the record. It is true the proceedings to supply the missing parts of the record were instituted under the twelfth section of the act of 1864, and it is also true that that act was repealed by the act of 4th February, 1867, prior to the last trial in the court below. But it is equally true that an ample remedy existed at common law. The act of 1864 only provided a more convenient mode of effecting the same objects. There was no inconsistency or illegality in engrafting the common-law remedy upon the petition filed under the act of 1864, after the repeal of that act. The legislature, in passing that act, rather had in view to provide a rule of evidence in supplying proof of lost pleadings and records and their contents, than a legal remedy, as to the mere form of providing.

Your honors will notice that the contract between plaintiffs in error and defendant in error, as well as the institution of the original suit to enforce the same, were prior to the adoption of the Code of 1857. They are regulated by the provisions of Hutch. Code, p. 628. You will also observe that the latter Code did not contain the provisions of the former one (art. 7, p. 328) as to parties. The suit was instituted under the old, or Hutch. Code, and the issues were made up under the same. The substitution was under the act of 1864, before cited, in connection with art. 10, p. 329, of the Code of 1857. That article authorizes the court to " direct the formation of such issues to be tried before a jury, as may be necessary for the determination of all matters controverted in the pleadings, and such issues shall be tried by the same rules of evidence and practice that prevail in other cases at law," etc. In the exercise of that power the court looked into what was preserved of the record to ascertain, as nearly as possible, the very substance of the pleadings, both on the part of the defendant in error

and of the plaintiffs in error.   To ascertain particularly what were the grounds of defense, as well as the form of the plea presenting that defense, reference was made to the affidavits of the plaintiffs in error and his answer.   This clearly enough showed what were those grounds and what were those pleas, but the court did not compel plaintiffs in error to accept those, but told them they had the largest liberty to accept those, or consider it a suit just brought, and file what pleas and as many as they thought proper.   And it was not until he was in contempt of that order, by obstinately refusing to do either, as if by such action he could prevent the case ever coming to trial, that the court ordered the pleas to be substituted and the case to proceed to trial. Here was a bold attempt of a party refusing to state the grounds of his defense, as set up in pleas which were lost (the misfortune of which, if unremediable, as he seems to think), should fall on those filing them and not on defendant in error.   No prejudice to the plaintiffs in error, on the merits of the case, is shown or is pretended.   They are simply caught in their own meshes.   It is the failure to get an advantage by sharp practice, on strictly technical points of pleading, that disturbs the equanimity of the plaintiffs in error or their counsel.

We have said, what we repeat, that the errors, if there were any, on and before the first trial and verdict, were cured by the setting aside of that verdict.   When the application was made to substitute pleadings, on the 11th January, 1866, and plaintiff in error was allowed to file any, and as many, pleas as he thought proper, they were left without cause of complaint.   When they objected that the demurrer to their pleas, setting up the interest of Philip Hilzheim, had not been acted upon, notwithstanding the record showed that the case was submitted to a jury on issues joined, and what was the substance of those issues (for which this court is bound to suppose the demurrer was overruled, and that plaintiff in error had pleaded

error), the court below thereupon overruled said demurrer, and again gave him leave to file new pleas.

We content ourselves with simply saying that the proper and only time for the court below to have considered the question of Philip Hilzheim's interest, and whether he should be a party, was when the motion to erase his name from the original petition, and dismiss the suit, as to him, was made. This court must presume that this question was then considered and decided. Again, it is not pretended that any legal evidence of his interest, the extent or character of it, was at any time presented to the court below. This was indispensable, in order that the court, and not the party, should decide whether it was such an interest as authorized or required him to be made a party. This is the universal practice, and it is the absolute requirement of the law that, when application is made to become a party, on the ground of interest in the subject-matter of the suit, it must be shown what that interest is, how acquired, etc. Moreover, at the date of these proceedings the law of pleading, as regulated by existing statutes, authorized dismissal of suits as to one or more of the parties sued ; a total change of parties, as they stood on the record, even to the striking out of the name of A., the plaintiff suing, and inserting that of B., in whom the right of action might be shown to be, by the proof adduced on the trial.

That the question could not be again brought up by pleas in abatement, is made so manifest by the argument of Judge Harris, that we forbear to add any thing upon it. For the same reason, we decline saying any thing more as to the propriety of overruling the demurrer to the pleas of plaintiffs in error, raising the same question, viz. : the interest of Philip Hilzheim. We again call attention to the difference between Hutch. Code, under which this case arose, and the Code of 1857, as to whom shall be made parties.

Throughout his whole argument, both oral and written, the counsel for plaintiffs in error has proceeded upon a false assumption, viz., that the court below did not dispose of

the demurrer to the two pleas filed by them before the first trial of the case, and which sought to set up the question of the interest of Philip Hilzheim, the dismissal of the case, as to him, and the erasure of his name from the petition. We have answered that when we say, 1st, that this court is bound to presume that the demurrer was disposed of, as the record shows that the case was submitted to the jury on the "issues joined," and the verdict and judgment, which are presumed to show what those issues were : 1st, an indebtedness on contract for work done ; and, 2d, a lien on certain property to secure its payment.   But, if mistaken in this, and the case went to the.jury on the first trial, without said demurrer being disposed of, then we say that error was cured, when the verdict was set aside ; and, by the subsequent overruling of the demurrer, when the case was submitted, on the application to substitute lost pleadings, so that the plaintiffs in error have the full benefit of that question.

The argument already made, both by us and by associate counsel, is sufficient as to the propriety of the judgment of the court below in overruling that demurrer.   The same reasons which were assigned in support of the action of the court below in dismissing as to Philip Hilzheim and erasing his name from the complaint, apply to the demurrer to said pleas.

To permit plaintiffs in error, at this late day, to avail themselves of any advantage on this point (the supposed interest of Philip Hilzheim), would be to perpetuate a monstrous wrong, not only upon the defendant in error, but the cause of justice.   They stood off, quietly acquiesced in, if they did not encourage, the dismissal of the case as to Philip Hilzheim, having previously filed pleas to the merits, viz. : that the work was not done pursuant to the terms of the contract, or in workmanlike manner ; and, after the dismissal, came forward to suggest that it was error to dismiss as to said Hilzheim, who really had some sort of interest, and was, therefore, a necessary party.

The only other point to which opposing counsel called the attention of the court, viz., that after the repeal of the act of 1864, he would necessarily go out of court, and was bound to proceed in chancery, was so fully answered in the oral argument, that it would be tedious to dwell on it. We only add, that if the proceedings begun under that act, when in force, but not consummated at the date of its repeal, could not go on as though said act had not been repealed, the party instituting that proceeding could certainly avail himself of the common-law remedy without dismissing those proceedings and beginning anew. A contrary view of the law would amount to a denial of justice in many cases in which the statute of limitations would intervene, if parties were thus compelled to dismiss, and seek a remedy in a court of chancery.

The great length of time which has elapsed since the defendant in error was driven to seek redress in court, the injurious and subtle attempts of plaintiffs in error, both in pleading and argument, to prevent a trial upon the merits, the unconscientious advantages sought to be obtained by a dismissal of the case, under the pretense that the proper forum is a court of equity, but with a view to get an opportunity to relieve themselves altogether by a plea of the statute of limitations, together with an abiding sense of the justice of our cause, is an apology for the length of this argument. We conclude it, as we began it, by invoking an earnest and thorough examination of the record by your honors, and with an admonition not to accept the abstract of counsel for the plaintiffs in error as a correct summary of the record.

Tarbell, J. :

The magnitude of the record, the local prominence of the property involved, and the complication of the controversy have invested this case with more than ordinary interest. Although the record is voluminous, and the proceedings somewhat peculiar, if not novel, familiarity with the facts

have led us to the conclusion that the merits of this obstinately litigated contest are compressed within narrow limits. The first question to be determined is, had the court authority to restore the lost pleadings and proceedings?

That this suit was commenced by petition to enforce a mechanic's lien; that the action was instituted in January, 1858; that process was served on defendants; that they appeared; that issue was joined; that a trial was had, with a verdict for plaintiff; that a new trial was granted on motion of defendants; that the war then suspended the progress of the suit from 1860 to 1866; that the court had jurisdiction of the parties and of the subject-matter of the litigation; and, in short, that the cause was pending in the circuit court of Hinds county undetermined, when, in 1866, the plaintiff applied to the court to proceed with the cause, and to order the restoration of lost pleadings and papers, are uncontroverted facts.

The cause, then, is to be treated as pending, undetermined, in a court of record having full jurisdiction, with all the powers conferred by statute and inherent in such courts. Of the pendency of this suit, an apt illustration appears in the fact that, had McLaughlin brought another action for the enforcement of his claim, the defendants could have successfully interposed to that the pendency of this, and the proof would have been complete. So, to a bill in equity, plaintiff would have been met with the objection that his remedy at law was open to him. In either case, the obstacles to his progress would have been serious, if not fatal.

We apprehend the variety of the documents lost, and the magnitude of the record to be restored, have not only served to incite the ably conducted opposition manifested, but are the source of the doubts, if any, of the power of the court to restore lost papers.

Perhaps the use of the word "substitute," which is not the most appropriate, has induced an unfavorable impression. "Restore," which signifies "to bring back, to heal,"

is more correctly expressive of this practice, and was used in the law of 1864. Terms, however, should not confuse; as substitute, restate, restore, and like words, may be used as implying the same general meaning.

It will hardly be denied, that if prior to trial a declaration, plea or other paper be lost, the court has power to permit its substitution, or restoration, or to admit secondary evidence of its contents. Not only has the court the power, but it is its duty to exercise it. To refuse, on proper showing, would be error if it did not subject the court to just animadversion. The very statement that, upon the loss of a declaration or plea, the court would, upon motion of defendant, dismiss the suit for want of power to allow a new declaration or plea to be filed, or the contents of it to be placed on record by parol testimony, is sufficient to expose its absurdity; and yet, that is the very proposition involved in the case at bar.

I. Upon the loss of records and papers, the courts have exercised their power in an infinite variety of circumstances.

1. We quote, by way of illustration, a few cases:

In the case of Jackson v. Hammond, 1 Caines, 496, the court allowed the party to file a new record, including the *postea*, in place of one lost, after the lapse of six years, and to issue execution. In Jackson v. Parker, 2 Caines, 385, the plaintiff having obtained a verdict, and neglecting to file the record, the defendant was allowed by the court to do so. In the case of The People v. Burdock and Case, 3 Caines, 104, the record having been lost, a new one, including an indictment, was allowed to be filed. The journals of the court have been admitted as the best evidence of which the case was susceptible, the records having been burned. 1 McCord, 139. In North Carolina a memorandum from the clerk's docket, of the amount of the judgment, was received as evidence of a record in favor of a purchaser at sheriff's sale, under the circumstances of that case. 3 Hawks, 221. In Vermont, the files of the court have been resorted to, and copies of the writ and declaration, where the records

were lost. 4 Vt. 504. If there be sufficient proof of loss or destruction of a record much inferior evidence of its contents may be admitted, and it cannot be doubted that parol evidence is competent to prove the existence and loss of a record. 12 Mass. 400. The case of Lyons v. Gregory, 3 Hen. & Mun. 237, presents a remarkable similarity to the case at bar, besides its rare historical interest. One Claiborne, in May, 1771, obtained a judgment in King William county court, Virginia, against Richard Gregory. About the end of the revolution, the court-house, together with the records, including the documents on which this judgment was founded, were destroyed. After the lapse of many years, to wit, about the year 1800, upon a mere "minute" of the judgment containing only its "substance," imperfectly certified, the county court of King William county allowed the judgment to be docketed, with a view to its enforcement. The defendant interposed the most determined technical resistance, but not upon the merits. The case went twice before the district court, where the judgments of the county court were as often reversed and remanded, when it was taken to the court of appeals. Among other considerations urged by counsel was the long interval of war, and the occlusion of the courts, and a judgment final upon the whole case was asked, and such was the judgment of the court of last resort. *Vide*, also, 1 Miller (La.), 137 ; 2 Blackf. 228 ; 4 Leigh, 137 ; 1 Watts, 427 ; 2 Hays ;. 9 Pet. 663 ; Eakin v. Vance, 10 Smedes & Marsh. 549.

2. As to amendments, it is held that the record may be amended at any time, if there is any thing to amend by. Bac. Abr., title Amendments ; Hard. 62 ; 6 Monr. 341 ; 7 Conn. 71 ; 4 Harr. & McH. 498 ; 3 Cow. 43 ; 7 ib. 344. Here we have portions of the record, and it is only a question as to the restoration of the lost parts.

3. The doctrine of secondary evidence is familiar to the profession. Parol proof of contracts, deeds and records lost or destroyed is of constant occurrence, regardless of the

amount or extent of the rights and of the property involved. If there had been a judgment, execution and sale of the property in this case, and a question had arisen as to the title of purchaser at sheriff's sale, that secondary evidence of this record in support of title would be proper is, we suppose, too plain a proposition for dissent.

4. Bouvier says of "pleadings," that they are "the statements of the parties, in legal and proper manner, of the causes of action and grounds of defense.  *  *  *  They were formerly made by the parties or their counsel, orally, in open court, under the control of the court." In other words, pleadings are but the statements of the issues to be tried. Pleadings and records were always subject to amendment under certain limited and prescribed circumstances, with the permission of the court, though it remained for time and experience to incorporate the subject of amendments permanently into legal jurisprudence.

The cases cited, secondary evidence, amendments, and the case before us, present but different phases of the same general principle, yet it cannot fail to be observed that the question of the restoration before trial. as in the case before us, of papers and proceedings lost or destroyed, is one altogether inferior, in all its aspects and results, to the cases referred to. The denial of the power of the courts to substitute, restate or restore lost pleadings and proceedings, under suitable circumstances, would be equivalent to the declaration that the administration of justice is based upon a Draconian system of severity and stiffness, unyielding and inexorable, and that, contrary to facts and text-writers, that, in the last century, remarkable for the liberal tendencies of thought, legal jurisprudence has made no progress.

5. The statutes particularly referred to in the arguments are two : 1st, that of 1864 ; 2d, the mechanics' lien law.

Counsel on both sides assume the law of 1864, under which the petition to substitute was filed, to have been repealed in 1867. An examination shows that of the eighteen sections of that law, only seven were repealed, leaving

the remaining sections intact, of which the first confers full, positive, general and unqualified powers upon all the courts of the state, both law and equity, to reinstate causes and restore papers and records when lost or destroyed ; while the sixteenth has reference to the service of notice, citations, etc.   Article 10, p. 329, Rev. Code, is as follows: "The court may direct the formation of such issues to be tried before a jury, as may be necessary for the determination of all matters controverted in the pleadings, and such issues shall be tried by the same rules of evidence and practice as prevail in other cases at law ; and the court may set aside verdicts, and grant new trials, and give judgment according to the justice of the case."

6. As to the inherent powers of courts of record, *vide*, Bac. Abr. title Courts ; Bouv. Law Dic. title Courts ; 1 Pet. 604 ; Serg. & Rawle. 253 ; 8 ib. 336 ; 2 Mo. 98.   They can be deprived of their jurisdiction by express terms of denial only.   3 Yates, 479 ; 9 Serg. & Rawle. 298 ; 2 Burr. 1042 ; 1 W. Black. 285.

It seems to us that the power of the circuit court to restore the missing portions of the record in this instance, prior to the trial, whether by statute or common law, was ample.   To hold that a court of record, upon such a state of facts, independently of the statute, does not possess the inherent right claimed for it in the case before us, would deprive the courts of their most useful, beneficent, remedial authority.

II. Upon this branch of the case, it only remains to consider, whether, in the steps taken by the circuit court, due regard was had to the rights of the parties.

Referring to page thirty-three of the record, under date of November 12, 1867, we find the order to substitute in the following words :

"This cause coming on to be heard on motion of the plaintiff to file substituted and authenticated copies of his lost pleadings in this cause and try the same instanter ; and it appearing to the court from the transcript of the records

of the orders made in the cause remaining on file therein, the petition filed by the plaintiff and the answer thereto, that this cause was pending in this court and that part of the pleadings and papers pertaining to the record therein have been lost or destroyed as that the same cannot be found, and it further appearing, that the papers or parts of the record so lost can be supplied in substance and effect, and that the cause may be tried on its merits : It is ordered that the plaintiff have leave to file a new complaint in lieu of the one lost, together with an account, and that the defendant have leave to make out and file the answer and pleas and a bill of exceptions in lieu of, and to correspond in substance and effect with, those heretofore filed, or have leave now to plead, and that the cause proceed to trial."

So far from acting hastily, and oppressively, the court below appears to have proceeded with prudence, caution, and even tenderness toward the defendants and their attorneys.  The latter were officers of the court.  It was their duty to obey its orders, which might have been peremptory, but they were afforded the opportunity (and time would have been given if asked) to plead, and to prepare substitutes for the lost papers.  The facts were all within their knowledge.  Their original answer, filed in 1858 and withdrawn by them in 1859, was in their possession.  Its loss at least is not alleged.  The action was a simple one, for work, labor and materials.  The active contracting defendants were living and present.  Under the order and in connection with the provisions of the Code as to amendments, their rights were in no danger, but were fully and perfectly protected.

III.  The next question in the solution of this case, as it presents itself to our view, involves the first assignment of error, and the disposition of the pleas in abatement.

Upon page four of the record we learn that the plaintiff in May, 1859, on leave of the court, amended his complaint by striking out the names of P. Hilzheim, Shaw, Hunt

and Anderson, to which permission and action the defendants objected and excepted.

The facts presented to the court by the respective parties for and against this amendment the record does not state. In the absence of these facts, no error being shown, the presumption is, that the court acted upon a just and legal basis. Subsequently, during the same term, the defendants asked and obtained leave of the court to withdraw their issuable answer to the merits. In the language of the order, "it is considered by the court that they have leave to withdraw the pleas by them heretofore filed in this cause, upon leaving certified copies of the same upon file with the papers, and that they have until Saturday, May 21st, in which to file further pleas in this behalf." Under this order they could only file further pleas to the merits, yet they filed pleas in abatement, attempting to set up an interest in P. Hilzheim in the property in controversy. Notwithstanding these pleas, and though, as far as the record shows, undisposed of, the cause was tried on the merits in 1860. The existence of these pleas, without action, was unnoticed until 1866.

In regard to them we remark: 1st. They were unauthorized by the order; 2d. The question, it is to be presumed, was disposed of by the court, on the motion for leave to amend plaintiff's complaint, opposed by defendants; 3d. An inspection of these pleas shows the demurrer to them to have been well taken. They do not sufficiently set out the interest of P. Hilzheim in the hotel contract and property. The extent and circumstances of that interest were peculiarly within the knowledge of the defendants, and failing to state it distinctly, so that the court could act upon it, the presumption was strongly against the plea.

For these reasons, the pleas were irregular and were properly disposed of.

4th. But the granting of a new trial cured this error, if it was such.

IV. The merits: Neither in the record, in the assign-

ment of errors, nor in the argument of counsel, do we discover any complaint that the issues in this case were not fully and fairly presented to the jury. In this court the defendants rest their cause upon technicalities, mainly those involving no vital, legal principle, but only discrepancies alleged to exist between the originals and substituted papers. There have been two jury trials on the merits: One, in 1860, resulting in a verdict for plaintiff, for $4,082 79.

The cause of action arose in 1857. The defendants state on oath that the controverted amount was between three and four thousand dollars. They sought to reduce the claim, on the ground that the work was badly done and the materials inferior. Twelve citizens and neighbors, constituting the jury, in the same county where the property is situated and the work performed; jurors, and parties probably well known to each other, and each, probably, familiar with the property, if not with the very work in controversy, declared, on oath, that the defendants were indebted to the plaintiff in the amount above stated. Making a calculation of the interest, the sum allowed for work and materials can be readily estimated.

Again, in 1867, another jury, at a circuit court held in Jackson, in the midst of the parties and witnesses, and within sight of the walls of the "Bowman House," rendered a verdict, by which they say, that on the 25th of November, 1867, the defendants were indebted to the plaintiff in the sum of $5,887 59, exceeding the verdict of 1860, only by the interest. If the issues were not fully presented on this trial it was the fault of defendants, for they had leave to restate the pleadings, and their right to amend, under the Code, is almost *ad libitum*. And, if the allegations of the defendants in regard to the work and materials were not investigated, the defendants are alone responsible, for the trial was in the midst of a "multitude of witnesses." There could have been no lack in this respect, because missing portions of depositions were allowed to be supplied

by their own statements. Indeed, as already stated, we have looked in vain through the record, and into the assignment of errors, for information that there was not a full, fair and impartial presentation of all the facts to the court and jury.

V. Alleged errors: We have patiently examined the record, the assignment of errors, and the argument of counsel. From the almost infinite number of objections and exceptions, it might well be said of this cause that "clouds and darkness round its base" are "spread," though in its conclusion both parties will, doubtless, gladly complete this couplet of a charming poet. The errors assigned are mainly founded upon the numerous discrepancies and disagreements which swell the record, through the policy of resistance pursued by the defendants.

It does not appear that these contested points of counsel, whose defense is marked by rare zeal and acuteness, in any way entered into the trials on the merits, or that they could have influenced, even remotely, the verdict of the several juries. If any material right of the plaintiff in error has been denied, we are unable to perceive it, or if the verdicts of the juries were unjust it has not been pointed out to us. If the pleadings, as restated, failed to set up fully (which does not appear) the defense, or if the record presented to us is defective, the plaintiff in error cannot complain, for they had the opportunity to re-create and amend both. Except in the single instance of supplying missing portions of depositions, they have chosen the policy of resistance and disagreement from the powers of the court to the most unimportant paper or fact. Most of the discrepancies and omissions may be accounted for through this mode of defense. That the merits were thus withheld from the juries is not made to appear, while it is apparent that nearly, if not quite, a perfect record might have been presented by the co-operation and aid of plaintiffs in error, but no such effort was made by them.

Relying upon the impartiality of jury trials, two or

three general rules in addition underlie and have largely influenced the results we have reached. 1st. The equitable character of mechanics' liens. The claims of the mechanic are favored in law. They are often unlettered men, and courts will uphold the policy of giving statutes a free interpretation in favor of the laborer. Buck v. Brian, 2 How. ; Buchanan v. Smith & Barksdale, 43 Miss. 2d. The construction of laws and statutes. Story says "laws will be construed strictly, to save a right or avoid a penalty, and liberally, in order to give remedy." And again, that "remedial statutes are construed liberally." 3d. The general principles of justice and equity in their highest sense. Blackstone says, "It is a settled and invariable principle in the laws of England, that every right, when withheld, must have a remedy, and every injury its proper remedy." 2 Black. 109. Our own Blackstone, Kent, says, "the common law may be cultivated as part of the jurisprudence of the United States. In its improved condition in England, and especially in its improved and varied condition in this country, under the benign influence of an expanded commerce, of enlightened justice, of republican principles and of sound philosophy, the common law has become a code of matured ethics and enlarged civil wisdom admirably adapted to promote and secure the freedom and happiness of social life. 1 Kent's Com. 366. Again our author says, "It fills up every interstice, and occupies every wide space which the statute law cannot occupy." Ib. 367. And again, that it is "the application of the dictates of natural justice and of cultivated reason to particular cases." Ib. 514. "Commutative justice," Bouvier says, is "that virtue whose object it is to render to every one what belongs to him, as nearly as may be, or that which governs contracts." "To render commutative justice the judge must make an equality between the parties, that no one may be a gainer by another's loss," while "distributive justice," is described as "that virtue whose object it is to distribute rewards and punishment to each one according to his merits, observing

a just proportion by comparing one person or fact with another." The Frederican Code is summoned up in one single brief rule of right, namely : "Give every one his own." The whole spirit of modern jurisprudence is directed to prevent substantial justice from being defeated by an adherence to mere technical forms. 40 Miss. 62.

Believing substantial justice has been done, this whole case considered ; and in view of all the facts and circumstances, we are of the opinion that the interest of all the parties will be best promoted, and that we approach nearest to justice to each, by affirming the judgment of the court below.

Let the judgment be affirmed.

A re-argument was applied for and granted in the terms following, viz. : Per Curiam.   Re-argument granted, but to be limited to two questions : 1st. Whether the judgment covers too much land, or whether it is proper in this particular ; 2d. Whether the proper parties were before the court, and whether the case was disposed of as to parties.

We adhere to the opinion on the proposition of the right of a court of law to supply the loss or destruction of parts of the papers constituting matter of record, by parol, or the best evidence capable of being produced.

On the argument the same counsel appeared as before, and besides oral argument, they severally filed elaborate written arguments too long for insertion here, and which the reportor is unwilling (for fear of doing injustice) to attempt to abridge.

The following is the opinion delivered after the re-argument :

TARBELL, J. :

This case is submitted, upon re-argument, with reference to two points only, viz.: as to the parties and as to the premises in controversy.

It would be sufficient to say, as conclusive of the ques-

tions involved, that the proceeding to enforce a mechanic's lien is in the nature of a suit in equity, designed to give effect, in one suit, to the liens of the mechanics and material men, who have contributed to the erections and improvements on the premises, and, also, to conclude the interests of all persons in the premises at whose instance and for whose benefit the work is done and materials supplied. There may, therefore, be several distinct judgments. In view of the peculiar circumstances attending this case, the loss of papers by the casualties of war and the great difficulty of substitution, we have not been disposed to apply to it a nice criticism ; but rather to reach approximate justice, so far as this could be done in accordance with the principles of law. This proceeding was instituted in 1858 against J. H. Bowman, H. Hilzheim, P. Hilzheim, John. W Shaw, F. S. Hunt and Warren P. Anderson, claiming mechanic's lien on the " Bowman House," so called, and the premises belonging therewith. On leave given, opposed by the other defendants, the original petition was amended by striking out the names of P. Hilzheim, Shaw, Hunt and Anderson. The evidence before the court, upon which this amendment was allowed, is not given in the record, and the presumption is, therefore, strongly with the action of the circuit court. If, however, the affidavit of Bowman, contained in the record, constitutes the evidence thereon, it is entirely evasive on the interest of P. Hilzheim, and it is most significant, that P. Hilzheim, who, of all others, must have known the interest of Phillip, failed to state or disclose it to the court.

Subsequent to the amendment as to parties, a trial was had, resulting in a judgment for the plaintiff, whereupon a motion for a new trial, made by defendant, was sustained.

Upon the application to substitute papers, in 1866, the defendants objected thereto, and among other objections made, it was insisted that the court erred in 1859, prior to the trial in 1860, in permitting plaintiff to amend, by striking out P. Hilzheim, and in refusing to make the widow

and heirs of Phillip, parties, but no question was raised as to the description of the premises upon which a lien was claimed. It may be stated that the widow and heirs of Phillip did not seek to be made parties, nor was their interest ever disclosed, so far as the record shows. In his affidavit before referred to, Bowman states, that " Phillip Hilzheim, in his life-time, held written evidence of that interest and joint ownership, that writing was made by Hyman Hilzheim, but whether it was an absolute deed, conveying legal title to an individual interest in the premises, or a writing by which Phillip Hilzheim's right, title, or interest was recognized and acknowledged, affiant is not now certain, nor does affiant know precisely the interest owned by Phillip Hilzheim, but Hyman Hilzheim certainly knew, and was perhaps the only one who did know the interest of Phillip. His neglect to disclose that interest must be taken strongly against the averment that Phillip was a necessary party to this proceeding.

But these questions are set at rest, so far as our action is concerned, by the conduct of the defendants, upon the order granting leave to supply lost papers. The defendants were then at liberty to aid in making up the issue, in bringing forward the necessary parties, and in correcting the description of the premises sought to be embraced in the lien. The defendant utterly declined to pursue this just course, but adhered firmly to a policy of obstinate resistance, and the description of the premises has been nowhere questioned, except on the final hearing in this court.

In the judgment upon the verdict, in 1860, the premises are described as "lots Nos. 1 and 2 in fractional square number one in the city of Jackson," together with, etc., "being known as the Bowman House." The substituted petition, filed in 1867, for the original, refers to the premises as "said hotel, and the lot of ground on which it stands, which lot is known and described as fractional square, No. 1, north, in the city of Jackson, and the building or hotel known as the Bowman House, and is on the corner of State

and Amite streets, excepting the lot on the north of said hotel, on which stands a house occupied by ————;" and further, the petition claims "a lien on said building, and the lot on which it is erected." The answer of defendants, and their pleadings refer to the "hotel and lot in plaintiff's petition mentioned." In the judgment upon the second verdict in 1867, the description is, that "the lots, buildings and premises described in his petition or complaint in this cause, are subject to the lien," etc., and again, as "the lots, buildings and appurtenances specified in said petition or complaint, to wit: lots Nos. 1 and 2 in fractional square, No. 1, north," etc.

So far as we can judge, this description is definite, and the premises are thereby capable of actual and precise location. This judgment, however, will conclude only the interest of the parties hereto. Of course, if there be other parties having an interest in these lands, they will be in no wise affected by the judgment. Hence, we have no hesitation as to the justice of the conclusion we have reached. The case has been in the courts nearly fourteen years, and, although not without its difficulties, we are satisfied with our former determination thereof.

We adhere to our judgment heretofore given.